**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**
JAMES J. WALDRON, CLERK

January 25, 2012

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Nelson DosSantos, Deputy

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| AMERIPAY, LLC, | |
| Debtor. | CASE NO.: 09-27794 (NLW) |
| Charles M. Forman, as Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | |
| Florence Township, | |
| Defendant. | ADV. PRO. NO.: 11-2014 (NLW) |

**OPINION**

**Before:**     **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Richard D. Trenk, Esq.
Joshua H. Raymond, Esq.
Trenk, DiPasquale, Webster, Della Fera & Sodono, PC
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
Attorneys for Township of Florence

Brigette McGrath, Esq.
Forman Holt Eliades & Ravin LLC
80 Route 4 East, Suite 290
Paramus, NJ 07652
Attorneys for Trustee

1

**STATEMENT OF FACTS**

This matter is brought before the court by the Township of Florence ("Township") on a motion for dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claim upon which relief can be granted, or in the alternative, a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Charles M. Forman as the Chapter 7 Trustee for the Debtor's Bankruptcy estate opposes the Township's motion on the grounds that the complaint is adequately pleaded and the transferred property was not held by the Debtor in trust.

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2), (E) and (H).

**I.    Background**

Ameripay, LLC ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 9, 2009 ("Petition Date"). Shortly thereafter the United States Trustee appointed Charles M. Forman ("Trustee") as the Chapter 7 Trustee for the Debtor's Bankruptcy estate. Prior to bankruptcy, the Debtor performed payroll and tax payment services for various municipalities, boards of education, and businesses in New Jersey.

The Debtor was owned and controlled by Paul G. Bultmeyer ("Bultmeyer") and Arthur J. Piacentini ("Piacentini"), who also owned and controlled Sherbourne Capital Management, Ltd. ("Sherbourne Capital") and Sherbourne Financial Ltd. ("Sherbourne Financial"). In May 2009 the Securities and Exchange Commission ("SEC") filed a complaint against Sherbourne Financial, Sherbourne Capital, Baltmeyer and Piacentini as named defendants, and against the Debtor and an entity known as Equitair, Ltd. as relief defendants, in the United States District

Court for the District of New Jersey. In its complaint the SEC alleged that Bultmeyer and Piacentini used Sherbourne Capital and Sherbourne Financial to defraud twenty-three investors of more than $1 million. The SEC also claimed that Bultmeyer transferred $830,000.00 of those funds to the Debtor.

After consideration of the SEC complaint and other papers, the Honorable Jose L. Linares granted various relief in favor of the SEC, including (a) restraining the defendants from transferring or encumbering their assets, (b) placing all of the defendants under the control of the court, and (c) appointing Michael D. Sirota ("Mr. Sirota") to serve as the receiver for Sherbourne Capital, Sherbourne Financial, and the Debtor. Subsequently, after considering Mr. Sirota's report, Judge Linares authorized the filing of this Chapter 7 case.

II.     **Business Relationship Between the Debtor and Florence Township**

Sandra Blacker ("Ms. Blacker") is the Chief Financial Officer ("CFO") for the Township and has served in this capacity since January 2000. (Certification of Sandra Blacker dated September 8, 2011 ("Blacker Cert.") ¶ 2) Ms. Blacker states that she has direct knowledge of the business relationship between the Township and the Debtor. (Blacker Cert. ¶ 3)

The Debtor began providing payroll services to the Township in January 2006. (*Id.* ¶ 11) As the Township's payroll company, the Debtor's responsibilities included withdrawing funds from the Township's payroll account to pay employee salaries and to pay withholding taxes, as well as state and federal income taxes on behalf of the Township. (*Id.* ¶ 12) Such withdrawals occurred on a weekly basis. (*Id.* ¶ 15) After the Debtor paid the Township's employees, it held the funds withdrawn for payment of state and federal income taxes for seven days before paying

3

the taxing authorities. (*Id.* ¶ 16) The Township did not authorize the Debtor to use these funds for any other purpose. (*Id.* ¶ 17)

To fund its payroll account, the Township weekly transferred funds into its payroll account sufficient to "cover the employee's checks and to cover payroll deductions payable, which included the employee's portion of State and Federal tax obligations." (*Id.* ¶ 21) Ms. Blacker asserts that the Debtor was fully aware of the parties who were to receive payments from the Township's payroll account. (*Id.* ¶ 23)

The Debtor billed for its services at a flat weekly or monthly rate. (*Id.* ¶ 20) On a monthly basis the Township paid for the Debtor's services by a check drawn on the Township's operating account. (*Id.* ¶ 18) This account was separate from the account from which the Debtor was authorized to make withdrawals for tax-payment purposes. *(Id.* ¶ 19)

### III.    The Preference Claim

The Trustee agrees that the Debtor contracted with the Township and other customers to collect payroll-related taxes and to remit the taxes to the applicable taxing authorities. (Complaint to Avoid and Recover Avoidable Transfers ("Complaint") ¶ 18) Additionally, the Trustee acknowledges that the Debtor prepared and filed the necessary, related tax returns and interacted with the applicable taxing authorities on behalf of the Township and other customers. (*Id.*)

The Trustee further alleges the following:

> At the direction of Bultmeyer and Piacentini, and at their whim, all funds that the Debtor received from its customers, from Sherbourne Capital, from Sherbourne Financial or from any other source were commingled and were used to pay outstanding tax and related obligations of any of the Debtor's customers, to fund the Debtor's operations and losses, to pay creditors of Sherbourne Capital or Sherbourne Financial, or as otherwise directed by Bultmeyer and Piacentini.

4

(Complaint ¶ 20)

Specifically with regard to the transfers that are the subject of the Complaint, the Trustee alleges that wire transfers were made to the Internal Revenue Service ("IRS") from Debtor's account #3450032437 in the period April 21, 2009 to May 12, 2009, totaling $99,855.11 ("Transfers").[1] (Complaint ¶ 36) The Debtor made these payments on the Township's behalf. (*Id*.) Additionally, the Trustee alleges that the funds in account #3450032437 were commingled funds derived from various sources and the Debtor was not contractually obligated to hold in trust or to segregate the funds received from the Township. (*Id.* ¶¶ 36, 38)

By reason of the commingling, the Trustee alleges that the Transfers were transfers of the Debtor's interest in property, the Township was a creditor of the Debtor at the time of the Transfers, the Transfers were made for the benefit of the Township and on account of an antecedent debt owed by the Township. (*Id.* ¶¶ 41-45) Further, the Trustee alleges that the assets of the estate are not sufficient to pay all creditors in full and the Transfers enabled the Township to receive more than if the payments to the IRS had not been made. (*Id.* ¶¶ 45-46)

The Trustee's accountant, Allen D. Wilen ("Mr. Wilen"), identified four bank accounts used by the Debtor. According to Mr. Wilen, some of the Debtor's customers (including the Township) daily deposited funds into account #024261526 at Columbia Bank ("Columbia #1526") for the Debtor to disburse to the appropriate taxing authorities. (Certification of Allen D. Wilen ("Wilen Cert.") ¶ 10) Further, Mr. Wilen identified account #3450032437 at TD Bank ("TD #2437") as the account used by the Debtor to issue payment to the taxing authorities. (*Id*. ¶ 13) Mr. Wilen states that Bultmeyer and/or Piacentini caused the Debtor to make daily fund

---

[1] This account is the TD Bank account discussed at greater length infra and defined as TD #2437.

5

transfers from Columbia #1526 to TD #2437 for the purpose of remitting funds to the taxing authorities on behalf of the Debtor's customers. (*Id.*)

The remaining two accounts appear to have been established for the benefit of the Debtor. Mr. Wilen states that fees paid by customers for the Debtor's services were deposited into account #3452916464 at TD Bank ("TD #6464"). (*Id.* ¶ 16) Further, the Debtor maintained account #3450032445 at TD Bank ("TD #2445") as its operating account. (*Id.* ¶ 13)

As evidenced by the Complaint and Wilen Cert., it does not appear that the bank accounts described above were used solely for their respective, intended purposes. Mr. Wilen defines the time period in which the alleged preferential transfers occurred as the period from April 10, 2009 through May 19, 2009 ("Preference Period"). (*Id.* ¶ 8) In the Preference Period, the Debtor's customers transferred approximately $9.8 million to the Debtor for payment to the taxing authorities, but the Debtor remitted only approximately $7.5 million to the taxing authorities. (*Id.* ¶¶ 8-9)

As described by Mr. Wilen, during the Preference Period at the direction of Bultmeyer and/or Piacentini, the Debtor transferred "approximately $1.5 million from Columbia #1526 for the benefit of creditors of Sherbourne Capital or Sherbourne Financial." (*Id*. ¶ 11) Mr. Wilen states that he cannot identify which customer funds were diverted. (*Id.*) He further states that Bultmeyer and/or Piacentini made daily transfers from Columbia #1526 to TD #2437 "for the purpose of remitting funds to applicable taxing authorities on behalf of the Debtor's customers." (*Id*. ¶ 13) Moreover, the funds deposited in TD #2437 from Columbia #1526 were commingled with other funds received by the Debtor. (*Id.* ¶ 17) For example, funds from TD #6464 were deposited into TD #2437. (*Id.* ¶18) Mr. Wilen also indicates that in the Preference Period Bultmeyer and/or Piacentini caused funds deposited in TD #2437 to be transferred to Columbia

6

#1526.  (*Id*. ¶ 15)  For that matter, Mr. Wilen states that transfers were regularly made from Columbia #1526 "to fund the Debtor's operations and losses and for various other purposes." (*Id*. ¶ 12)

Mr. Wilen further states that neither he nor anyone in his employment has located a written contract between the Debtor and the Township.  (*Id*. ¶ 24)

**LEGAL ANALYSIS**

The Township moves for dismissal of this adversary proceeding for failure to state a claim or, in the alternative, for summary judgment because no material fact precludes finding the Transfers were not property of the estate.  The court is not persuaded that either form of relief should be granted.

    **I.**    **Motion to Dismiss Analysis**

Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b), allows a court to dismiss the complaint if the defendant shows that the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))(internal quotations omitted); *see* Fed. R. Civ. P. 8(a)(2).  The court must take the facts alleged in the complaint as true, must draw reasonable inferences in favor of the plaintiff, and may not dismiss the complaint "merely because it appears unlikely that the plaintiff can prove

those facts or will ultimately prevail on the merits." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)(explaining that *Twombly* reaffirmed this long-standing standard for a motion to dismiss under Federal Rule 12(b)(6)).

In order to survive a Rule 12(b)(6) motion, the complaint must allege more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Third Circuit requires trial courts to "conduct a two-part analysis. First the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009). Second the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211. "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.*

Bankruptcy Code section 547(b) authorizes a trustee to avoid a transfer of an interest of the debtor in property (a) to or for the benefit of a creditor, (b) for or on account of an antecedent debt owed by the debtor before the transfer was made, (c) made while the debtor was insolvent, (d) on or within 90 days before the date of the filing of the bankruptcy petition, and (e) that enables such creditor to receive more than it would receive if the debtor liquidated under Chapter 7. *See* 11 U.S.C. § 547(b); *Travellers Int'l AG v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 134 F.3d 188, 191 n.1 (3d Cir. 1998); *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996). The trustee must establish all five elements of section 547(b) to recover under a preference action. *See* 11 U.S.C. § 547(g); *In re Roblin Indus., Inc.*, 78 F.3d at 34; *see also Orix Credit Alliance, Inc. v. Harvey (In re Lamar Haddox*

*Contractor, Inc.*), 40 F.3d 118, 122 (5th Cir. 1994) (no recovery under section 547 if any of the five elements are not established).

Here the Trustee's complaint factually identifies (a) the business relationship between the Debtor and the Township, (b) the payroll and tax services the Debtor was supposed to have rendered on behalf of the Township, (c) the commingling of the Township's funds with funds of the Debtor and Debtor's affiliates as well as the funds of other Debtor clients, and (d) alleges that the commingling caused the Township's funds to become indistinguishable from other funds and impossible to trace.  Further, the specific fund transfers are described by transfer date, transfer amount, Debtor account number, tax obligation, and tax quarter.  Finally, the Trustee states that the Debtor suffered net operating losses from 2006 through the Petition Date, and that the unfunded payroll tax obligations that the Debtor was required to pay on behalf of its clients were in excess of $10 million as of the Petition Date.  As a result, taking the factual allegations of the complaint as true, drawing all reasonable inferences in the Trustee's favor and assessing them in light of the elements of a preference, it is evident that the Trustee has met the *Twombly* requirement to set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 547.  Indeed, the facts are sufficiently specific that the Township has submitted a twenty-four paragraph certification from its CFO to attempt to establish an express trust demonstrating that no property of the Debtor was transferred when the Debtor made payments to the IRS.  Because this certification and the Wilen Cert. are documents outside of the complaint, the court will consider them infra in its analysis of the Township's request for summary judgment.

II.     **Summary Judgment Analysis**

From an evidentiary standpoint, a Rule 12(b)(6) motion is very limited in scope. As a general rule, courts are not permitted to consider matters outside of the complaint when ruling on a Rule 12(b)(6) motion. 5A Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 1357 (1990). Nevertheless, a court may consider matters of public record that bear a significant relationship to the complaint, orders or items appearing in the case record, issues that are incorporated by reference or integral to the claim, and matters subject to judicial notice. *Pryor v. Natl. Collegiate Athletic Assn.*, 288 F.3d 548, 559-60 (3d Cir. 2002); *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citing 5A Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 1366, at 491 (1990)). If the party moving to dismiss "uses materials not contained in the four corners of the plaintiff's complaint, and the court chooses to rely on such materials," the court may convert the motion to dismiss to one for summary judgment. *Schechter v. Cytodyne Tech., LLC (In re Nutraquest)*, No. 07-1292, 2007 WL 3311725, *8 (Bankr. D.N.J. Nov. 5, 2007)(citing *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 606 n. 4 (D.N.J. 2002)).

The court's consideration of the Blacker Cert. and Wilen Cert., as well as the Township's moving papers, makes it appropriate to analyze this case under a summary judgment standard.

### A. Summary Judgment Standard

Rule 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides for entry of summary judgment where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. On a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An

issue of material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A properly supported motion for summary judgment "will not be defeated by the mere existence of some factual dispute between the parties," unless the dispute over those facts has the potential to affect the lawsuit's outcome. *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995). Once the moving party satisfies its burden, "the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *DeAngelis v. Young (In re Young)*, No. 09-1774, 2010 WL 4777626, *5 (Bankr. D.N.J. Nov. 15, 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). A party may not defeat a motion for summary judgment unless the party sets forth specific facts in a form that "would be admissible in evidence." *Id.* If the non-moving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment for the movant. *Id.* (citing *Anderson,* 477 U.S. at 249-50).

B.  **Property of the Bankruptcy Estate**

The Township argues that the Transfers were not of property of the estate under section 541, because the Debtor held the funds subject to either a statutory or express trust. A bankruptcy estate is made up of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The "property for which the debtor is acting as a trustee and holding legal title becomes part of the estate, but only to the extent of the debtor's legal interest."[2] *Flint Ink Corp. v. Calascibetta*, No. 06-2517, 2007 WL 2687415, *4

---

[2] Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title

11

(citing 11 U.S.C. § 541(d)). Thus, property held in trust by the Debtor for the benefit of another is not property of the estate and cannot be recovered by the Trustee as a preferential transfer under section 547(b). *See Begier v. Internal Rev. Svc.*, 495 U.S. 53, 59 (1990) ("[b]ecause the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property' of the estate"); *see also Flint Ink*, 2007 WL 2687415, at *5 ("if a debtor transfers property before the bankruptcy petition is filed that would not have been subject to distribution to creditors, the avoiding powers may not be utilized by the Trustee.").

1.     *Begier* and the IRC Section 7501 Trust

The Township contends that a preferential transfer did not occur, because its funds (though perhaps commingled with Debtor funds) were trust funds and never became property of the Debtor. The Township argues that this court should apply *Begier* to find that the funds, which were withdrawn from the Township's payroll account by the Debtor, were held by the Debtor subject to a trust in favor or the United States under 26 U.S.C. § 7501. *Begier* addressed a trustee's effort to avoid a debtor's prepetition payment of withholding taxes and airline excise taxes to the IRS. *Begier,* 496 U.S. at 55-57. The IRS argued that because the payments were subject to the statutory trust imposed by section 7501, the funds were not section 541 property of the debtor and therefore were not avoidable as a preference. *Id.* at 57.

Under section 7501, the Internal Revenue Code ("IRC") provides that "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to

---

to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

be a special fund in trust for the United States." 26 U.S.C. § 7501. The IRC directs all employers to collect certain payroll taxes and remit those funds to the United States. The Supreme Court found that an employer's act of collecting occurs when the employer pays the wage to the employee, and that a trust under section 7501 is created at the moment of collection. *Begier,* 496 U.S. at 60-61. To conclude the syllogism, a section 7501 trust is thus created when the employer pays an employee's wage. An employer is not obligated to segregate these payroll-tax funds to ensure they are held in trust for the IRS. *Id.* Rather, the Supreme Court determined that a section 7501 trust is an abstract trust, consisting of the dollar amount of the tax monies owed to the government – "a dollar *figure* not tied to any particular assets." *Id.* at 62-63.

Relying on the legislative history preceding the enactment of the 1978 Bankruptcy Code, the Supreme Court also determined that Congress intended to require the IRS to demonstrate a connection between the abstract trust that arises in the amount of funds collected by a debtor/taxpayer and the payments made by the debtor/taxpayer to the IRS. *Id.* at 65-66. It noted that a House Report "expressly states [that] the limitation that the funds must 'have been properly held for payment' is satisfied 'if the debtor is able to make the payments.'" *Id.* at 66. From this language *Begier* concluded that a debtor's voluntary payment of taxes to the IRS is "alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid." *Id.* at 66-67. Thus, *Begier* found that the trustee could not avoid the debtor's payments to the IRS as a preference, as the funds were transfers of property held in trust for the United States and not property of the estate. *Id*. at 67.

To apply *Begier* to the matter at hand requires the court find that the taxes collected by the Township and subject to the section 7501 trust remained subject to the statutory trust when the Debtor transferred funds from the Township's payroll account to its account to issue payment

13

to the IRS. The court declines to extend *Begier* to these facts, because such an application is not supported by the language of section 7501, or other persuasive case authority.[3]

When met with a case similar to the facts before this court, the Ninth Circuit distinguished *Begier* and found that no statutory trust existed. Like the Debtor in the instant matter, the debtor in *Hamilton Taft* provided tax-payment services to its customers. *Wyle v. S&S Credit (In re Hamilton Taft & Co.)*, 53 F.3d 285 (9th Cir. 1995).[4] Also like the instant matter, Hamilton Taft paid the taxes owed by S&S Credit to the IRS during the preference period, and the trustee sought to recover those transfers from S&S Credit. The Ninth Circuit found that reliance by S&S Credit on *Begier* and section 7501 of the IRC was unpersuasive, since in *Begier* the taxpayer and debtor were the same entity. The Court pointed out that after S&S Credit collected the trust fund taxes it transferred those funds to Hamilton Taft without requiring it to segregate the funds and hold them in trust. *Id.* at 288. It found it significant that the section 7501 trust exists for the benefit of the IRS and not the taxpayer. *Id.* at 289. Thus it concluded that "[w]e should not, therefore, easily impute to Congress an intention to alter the common law of trusts when doing so would not materially further the interests of the beneficiary of the statute." *Id.* at 289-90. Further, "[n]or should we extend the holding in *Begier* more broadly than is necessary to accomplish its purposes when doing so necessarily undermines the Bankruptcy Code's core principle of equality of distribution among creditors." *Id.* at 290.

The Ninth Circuit also explained that under typical trust principles when property held in trust is transferred to another, absent an agreement to the contrary, the property is transferred free

---

[3] The language of § 7501 refers to "any person" "required to collect or withhold any internal revenue tax," seemingly broad. However, read in the context of the entire provision it is evident that it is addressed to the employer and does not encompass third-party service providers.

[4] Although this opinion was thereafter vacated and the appeal was dismissed by *In re Hamilton Taft & Co.,* 68 F.3d 337 (9th Cir. 1995), this court finds the Ninth Circuit's reasoning to be persuasive here.

14

of that trust. *Id.* at 288. Since S&S Credit did not demonstrate that its tax payments transferred to Hamilton Taft were to be held by Hamilton Taft in trust for the benefit of the IRS, the court found the property was transferred free of trust and thus was property of the estate. *Id.* Here, the Township does claim that the funds withdrawn from its payroll accounts were subject to an express trust, but provides few facts to establish the existence of a trust agreement. The Township has not produced any written trust agreement. Nor has it put forth sufficient facts from which the court could find the existence of an oral agreement. For example, no facts are presented to establish who negotiated the terms of the services provided by the Debtor, and the description of how the services were performed are not sufficient to understand the precise terms of the service agreement, much less the terms of any trust agreement.

    2.    <u>Property Held in Express Trust by Debtors</u>

For purposes of summary judgment, the Township has simply not demonstrated that there are no factual disputes and that as a matter of law the funds paid to the IRS were trust funds and not property of the Debtor. The Bankruptcy Code does not define "trust." Since there is no overriding federal policy implicated by trust agreements, a court must look to the law of the forum state. *Flint Ink.*, 2007 WL 2687415, at *4. In New Jersey, an express trust is created by agreement of the parties, oral or written. New Jersey law does not require the parties to expressly use the word trust in an agreement, as there is no magical phrase that creates a trust. *Id*. at *6 (finding the parties intended to create a trust since the terms of the contract closely mirrored the elements set forth in the Restatement (Third) of Trusts). New Jersey does, however, rely to some extent on the Restatement (Third) of Trusts ("Restatement") for guidance.

15

Under the Restatement, a trust is a fiduciary relationship over property, arising from a "manifestation of intention to create that relationship" and held for the benefit of "one or more persons, at least one of whom is not the sole trustee." Restatement (Third) of Trusts §2 (2011). The Restatement also provides that an enforceable inter vivos trust may be created by declaration, transfer to another as trustee, or by contract. *Id.* at § 20 (noting an exception for the statute of frauds). Thus, New Jersey law finds the creation of a trust "when one party pays money to another primarily [dependent] upon their intentions." *Flint Ink*, 2007 WL 2687415, at *6 (citing *State v. U.S. Steel Co.*, 12 N.J. 51, 58-59 (1953)); *see Dierksen v. Albert*, 106 N.J. Super. 220, 224 (N.J. App. Div. 1969)("It is true that no particular form of words is necessary to create a trust so long as the intent to create the relationship [which] the law denominates a trust is found to exists, in all the circumstances, and the other legal requisites therefor are satisfied.").

In New Jersey, "[t]he issue of trust or no trust turns almost invariable on proof of intention since the trust arises upon mere expression of the requisite intention." *U.S. Steel*, 12 N.J. at 58 (1953)(quoting *Eagle B. & L. Ass'n v. Fiducia*, 135 N.J.Eq. 7 (N.J. Ch. 1944); s*ee also Hill v. Dobin*, 358 B.R. 130, 135 (D.N.J. 2006) (explaining in the context of an annuity that there is no bright-line rule for finding a trust and that a court must conduct a case-by-case examination of the facts to find a trust relationship). Illustrative of this point is *In re Tap*, 52 B.R. 271 (Bankr. D.Mass. 1985). In *Tap*, the debtor was a payroll-processing company and the plaintiff was a long-time customer of the debtor. *Id.* at 272. The debtor made regular payments to the federal and state taxing authorities on behalf of its customers, including the plaintiff. *Id.* After the involuntary bankruptcy petition was filed against the debtor, the plaintiff sought to reclaim funds it previously remitted to debtor for the purpose of paying its employee payroll withholding taxes. *Id.* at 274.

*Tap* analyzed the course of dealings between the debtor and plaintiff, ultimately finding the parties intended to establish a trust relationship. *Id.* at 276. It reasoned as follows:

> The delivery of funds by the plaintiff rested upon the clear understanding, typical of the debtor's relationship with customers, that the funds were to be remitted promptly to the appropriate taxing authorities. This arrangement was predicated upon the three-day period during which federal tax deposits must be remitted…. There was no consent to the debtor's use of such funds for its own purposes, and the plaintiff relied upon the debtor's function as a transmitter of the funds and not on any expectation of the debtor's solvency. These expectations and circumstances, in existence for some twenty-one years, are sufficient for this Court to find that an express trust, as evidence by the parties' conduct, existed as a matter of contractual relationship.

*Id*. In addition, the court explained that while the debtor commingled the plaintiff's funds with other customer's funds, this was merely a factor in the test for finding a trust. *Id.* at 277. The court did not find that the commingling extinguished the parties' intent to create a trust. *Id.*; *U.S. Steel*, 12 N.J. at 58 ("The intermingling of funds in itself does not destroy a trust otherwise evidenced by the intent of the parties.").

After finding a trust relationship, the second issue for the court was to trace the proceeds of the tax payment. *Tap*, 52 B.R at 277*; City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994)(citing *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1063 (3d Cir. 1993))(explaining that the proponent of the trust has the burden of identifying and tracing trust funds if they are commingled). After the plaintiff conducted a tracing analysis, the court found the debtor was a mere conduit for the payment of the plaintiff's taxes and the plaintiff was entitled to reclaim the tax funds. *Tap*, 52 B.R at 278.

Here, at this preliminary stage of the adversary proceeding, the court lacks sufficient information to determine if a trust relationship exists, such that the Transfers were not of property of the estate. To prevail on its summary judgment motion, the Township must show

there is no genuine issue of material fact such that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Without the benefit of discovery, there is insufficient information to grant summary judgment at this time. This motion's prematurity is highlighted by neither the Trustee nor the Township identifying the nature of the contractual relationship between the Debtor and the Township.[5] It is unclear to the court what the specific terms of the contract are and even whether the contract was oral or written. In the absence of such facts, the court is unable to determine the intent of the parties to create a trust relationship. Thus, the Township's summary judgment motion is denied.

---

[5] The Debtor was a party in another case in which the court relied on specific information regarding the contractual relationship of the Debtor and the customer. In *Triffin v. Ameripay, LLC*, 368 N.J.Super. 587 (N.J. App. Div. 2004), the court analyzed the contractual relationship under the Uniform Commercial Code, and found the following:

> Bultmeyer's testimony, corroborated by the banking documents associated with the creation of the account, is that Ameripay held funds for [the customer] in the account and maintained the account solely to satisfy [the customer's] payroll obligations …. The funds in the payroll account clearly belonged to [the customer], not to Ameripay. Had the electronic transfer of funds from [the customer] been credited to the payroll account, neither Bultmeyer nor Piacentini would have been entitled to those funds for their personal use or for the use of Ameripay.

*Triffin*, 368 N.J.Super. at 599-600.

**CONCLUSION**

As set forth above, the Township's motion to dismiss this adversary proceeding or, in the alternative, motion for summary judgment is hereby denied.

Dated: January 25, 2012                           /s/_____

                                                  NOVALYN L. WINFIELD
                                                  United States Bankruptcy Judge